IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| KATHY NASH ABBOTT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO.  7-11-CV-024-O-KA |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

Plaintiff Kathy Nash Abbott ("Abbott") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  For the reasons stated herein, I recommend that the hearing decision be reversed and remanded to the Commissioner for further procedings.

Background

Plaintiff alleges that she is disabled as a result of a myriad of disabling conditions.  After her applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge.  That hearing was held on April 8, 2009. At the time of the hearing,  plaintiff was 48 years old.  As a child she was assigned to special education classes beginning in the 7th grade and dropped out of high school in

1

the 9th grade due to pregnancy. The vocational expert ("VE") found that her past work included jobs a fast food worker, maid/housekeeper, home attendant, laundry laborer, waitress, fund raiser, and furniture assembler. Plaintiff has not engaged in substantial gainful activity since March 20, 2007.

The ALJ determined that plaintiff had the residual functional capacity to perform a limited range of medium work, and her non-exertional limitations did not prevent her from returning to her past relevant work. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of performing her past relevant work as a fast food worker, maid/housekeeper, laundry laborer, waitress, and fund raiser (TR. 50-51) -- jobs that exist in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff was not disabled. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

## Grounds Alleged

In her two grounds for relief, plaintiff contends that: (1) The ALJ and the Appeals Council made a legal error by failing to fully and fairly develop the record as to plaintiff's mental condition by failing to order consultive IQ examination and (2) the ALJ's finding that plaintiff could still perform her past relevant work was not

2

supported by substantial evidence because this finding was based upon a defective hypothetical question posed to the vocational expert.

## Standards for Review

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a

continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 146 n.5, 107 S. Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997).

## Consultive IQ Examination

On April 3, 2009, five days prior to the hearing before the ALJ, plaintiff's counsel mailed a letter to the ALJ enclosing certain of the plaintiff's school records from Missouri and urging that the ALJ order a consultive IQ examination of the plaintiff. (TR-412-417).[1] The school records reflect that in the 7th grade when plaintiff was 11 years old, she was assigned to a "special education M.R."(TR-414). The initials "M.R." that immediately follow the "special education" notation appear to reference <u>m</u>ental <u>r</u>etardation. The next page of the school record also reflects that plaintiff was held back and repeated the second grade.(TR-414). That page also reflects that two Stanford-Binet tests were conducted or reported in 1968 and 1971 when plaintiff was 8 and 11 years old showing IQ scores of 76 and 77 respectively. The same page reflects several teachers' generally negative comments about plaintiff and her behavior each school year.

At the administrative hearing plaintiff's counsel directly asked the ALJ again to consider the consultive IQ examination but the ALJ replied that he wanted first to "see what the work history is." (TR-45). After receiving the ALJ's decision with listed exhibits and noting that the April 3 letter and attached school records were not listed or mentioned, plaintiff's counsel again mailed his April 3 letter with the

---

[1]  The transcript numbering stops at page 413 which is the second page of Counsel's April 3, 2009 letter to which are attached the four pages of Missouri school records and to which the Court assigns the following numbers 414-417.

attachments to the Appeals Council. (TR. 229). He requested that they be considered on the appeal, that the council order the consultive IQ examination, and that the letter and school records be included in the record. (TR-229-30). They were included in the Exhibit list before the Appeals Council (TR-4), but the Council neither ordered the consultive examination, nor directly addressed counsel's letter requests, but affirmed the ALJ's decision without comment or analysis.

The plaintiff argues that his letter request with the school records coupled with plaintiff's other behavioral information before him should have created in the ALJ (and impliedly in the Appeals Council as well) a "reasonable suspicion" that the plaintiff was suffering from a degree of mental retardation, a non-exertional impairment that the ALJ failed to consider in his decision. Furthermore, the plaintiff argues that the ALJ and the Appeals Council "flatly ignored" the letter and school records even though the Council added a boilerplate statement that it "considered the additional evidence listed on the enclosed Order of Appeals Council." (TR-1).

"In general, claimants bear the burden to present all evidence relevant to their claims of disability. 20 C.F.R. § 416.912(a). However, the ALJ has a duty to fully and fairly develop the facts relevant to a claim for benefits. *Carey v. Apfel,* 230 F.3d 131, 142 (5th Cir.2000). This includes a responsibility to develop a complete medical history for the relevant period. 20 C.F.R. § 416.912(d). When necessary information "is not readily available" from the claimant's records or the Commissioner is unable

7

to obtain clarification from a medical source, the duty includes ordering a consultative examination. *Id.* § 416.912(f). *See also Wren v. Sullivan,* 925 F.2d 123, 128 (5th Cir.1991) (recognizing that a "consultative examination may be necessary to develop a full and fair record"). However, a full inquiry requires a consultative examination only when the examination is *necessary* for the ALJ to make the disability decision. *Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir.1987).[2] An examination is necessary only when the claimant has presented evidence sufficient to raise a *suspicion* concerning a non-exertional impairment. *Id.* If the claimant shows a failure to fulfill the duty to adequately develop the record and prejudice from the failure, the ALJ's decision is not supported by substantial evidence. *Brock v. Chater,* 84 F.3d 726, 728 (5th Cir.1996)." *Mapps v. Astrue*, 2010 WL 1946662 (N.D. Tex. 2010, J. Ramirez).

At the administrative hearing, to counsel's reminder regarding the consultive IQ examination he had requested in his letter the ALJ's response[3] saying, "Yeah, I'll see what the work history is," implies that the ALJ may have considered that plaintiff's work history would obviate any necessity for him to determine whether she suffered from a severe non-exertional (mental) deficiency incident to considering her

---

[2] Where the court stated: "The decision to require such an examination is discretionary. In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.1977), we stated "to be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." (emphasis in original). *Jones, supra* at 526.

[3] (TR-45, line 12).

residual functional capacity (RFC). Or the response may indicate that he was not aware that the letter and records had been sent to or received by him. In any event, the ALJ's decision does not even mention the letter, the school records, the request, or any reference to plaintiff's IQ, special education classes, her school behavior evaluations, or potential for plaintiff to have been suffering from mental retardation. The Commissioner argues (1) that substantial evidence supports the ALJ's proper step 4 determination that plaintiff did not meet her burden of establishing that she could not return to her past relevant work and (2) that the ALJ fully and fairly developed the record and properly determined that no consultive examination was required. With respect to the development of the record the Commissioner points to the administrative record that was considered by the ALJ and that is before the court and simply asserts that it was sufficiently developed. (Defendant's brief, p.5). The Commissioner argues that plaintiff failed to meet the very initial definitional criterium for application of the Listing 12.05 because she failed to sufficiently prove that she had "subaverage general intellectual functioning with deficits in adaptive functioning which initially manifested before age 22.[4] In support of this argument the Commissioner posits that the record clearly reflects that plaintiff did not suffer from "deficits in adaptive functioning" since as an adult of 48 she engaged in "cleaning,

---

4   That section provides in pertinent part as follows: 12.05. Mental retardation: mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22."

shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for her grooming and hygiene, using telephones and directories and using the post office."[5] While acknowledging that the school records may have reflected that plaintiff has "borderline intellectual functioning," the Commissioner asserts that there was no need to further develop the record as to plaintiff's degree of mental retardation disability because the school records provided by plaintiff's counsel failed to raise a "suspicion" that plaintiff suffered from mental retardation since those very school records reflect the Stanford-Benet IQ test results of 76 and 77, which are above (hence, were not within) the 60 to 70 IQ criterium mandated by subpart 2 of Listing 12.05C.[6] Besides, argues the Commissioner, the M.R. notation on the school records was apparently made by "her educators" not by a medical professional(s) whose evidence 'carries more weight."

In reply the plaintiff counters that the Commissioner's arguments are mere "ad hoc" rationalizations, made after the fact that neither the ALJ nor the Appeals Council made any of these determinations nor made any reference to any consideration of the criteria of Section 12.5C or to mental retardation at all.  Furthermore, Sections 404.1513 and 416.913 of the Act defining and delimiting medical and other evidence of impairments provides that "acceptable medical sources include "school

---

[5] That section provides as follows: "The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.... C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function."

psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only." And, the Stanford-Binet IQ tests are not as good as the Wechsler series of tests which would have been more indicative of the degree of plaintiff's intellectual functioning and which might well have shown she met the 12.05C criteria, especially since she had other "physical (and mental) impairments imposing additional and significant work-related limitations of function."

<u>Insufficient Hypothetical Question</u>

The ALJ found that plaintiff has the residual functional capacity to perform a limited range of medium work, including the jobs of "fast food worker, maid/housekeeper, laundry laborer, a hand packer, and a fund raiser. (TR-17). In making that finding, the ALJ expressly relied on the testimony of Clinton A. "Ross" King, Jr. ("King"), a vocational expert. (*Id.* at 17). According to the plaintiff, King based his testimony on a defective hypothetical question that failed to take into account all of plaintiff's impairments.

A hypothetical question to a vocational expert cannot provide substantial evidence supporting the denial of benefits unless: (1) the hypothetical reasonably incorporates all the disabilities of the claimant recognized by the ALJ; and (2) the claimant or his representative is afforded the opportunity to correct deficiencies in the question. *See Boyd v. Apfel*, 239 F.3d 698, 706-07 (5th Cir. 2001); *Bowling v.*

*Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Where an ALJ finds that a claimant is not disabled based on answers to a defective hypothetical, substantial evidence does not support the finding, and the case should be reversed and remanded for further administrative proceedings. *See Bridges v. Comm'r of Social Sec. Admin.*, 278 F.Supp.2d 797, 807 (N.D. Tex. 2003).

At the administrative hearing, the ALJ asked the vocational expert ("VE") a hypothetical question as to whether plaintiff could perform her past relevant work. (TR. 51). The hypothetical included certain non-exertional moderate limitations the VE should consider in forming his opinion. Conspicuously absent from the ALJ's hypothetical was any reference to any limitation of intellectual functioning by plaintiff that might have affected her ability to maintain work pace or maintain or keep a job. When asked by plaintiff's counsel to consider this additional non-exertional limitation, the VE rambled and equivocated but recognized that such limitation could jeopardize the maintenance of the job. (TR. 52). Admittedly, plaintiff's counsel's suggested limitation did not reference her intellectual functioning either.

## FINDINGS

Reviewing the entire record before the court and considering all of the arguments and positions of the parties, I find that there was sufficient evidence before the ALJ to create a "reasonable suspicion" that Plaintiff suffered from a degree of mental retardation as defined by Section 12.05 of such severity as to meet the criteria

of Section 12.05C (when coupled with plaintiff's other mental and physical limitations found by the ALJ) as to require that the ALJ order a *necessary* consultive IQ examination. The school records reflect not only the educator's determination that at the age of 11 years plaintiff was mentally retarded, but also that her intellectual limitations were manifested in bad behavior and lack of effort in her schooling. She was retained at least one grade, apparently because of such failures. The ALJ is charged with knowing the provisions of 20 CFR Pt. 404. Subpt. P, Listing of Impairments, that in section 6 thereof discuss that the results of intelligence tests are "only part of the overall assessment" and that a "narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation. Because of his failure to either review the school records, on in reviewing them failed reasonably to even get a "suspicion" of plaintiff's mental retardation, the ALJ failed to reasonably follow through to determine the degree of the deficit in plaintiff's intellectual functioning. The record does not imply (and I cannot infer) that the ALJ ever considered that the Stanford-Binet IQ scores were determinative as to whether he should consider inquiring further as to the degree of deficit in plaintiff's intellectual functioning. The record does not imply (nor can I infer) that the ALJ ever considered that the mental retardation notation in the school records should be ignored because it was made by an educator and not a medical professional. I find that a consultive IQ

examination was <u>necessary</u> for the ALJ to make a fair and reasonable record concerning an apparent deficit in plaintiff's intellectual functioning. I find that the ALJ failed to make an adequate record as to the degree of the deficit in plaintiff's intellectual functioning. I find that since the ALJ failed to reasonably order a consultive IQ examination the degree of deficit in plaintiff's intellectual functioning was not properly considered by the ALJ at step 4 in determining Plaintiff's residual functional capacity ("RFC"). Therefore, I find that at step 5, the ALJ failed to include in his hypothetical to the vocational expert a proper non-exertional limitation based upon a deficit in plaintiff's intellectual functioning. Since the ALJ's determination that plaintiff could perform her past relevant work was based in significant part upon the VE's opinion (that itself was based upon an hypothetical that failed to take into consideration any limitation of plaintiff' intellectual functioning), there was not sufficient evidence in the record to support the ALJ's determination that Plaintiff was not disabled. Because of the ALJ's failure to order a necessary consultive IQ examination, I find that plaintiff was prejudiced by the resulting ALJ's finding that plaintiff was not disabled.

<u>RECOMMENDATION</u>

I recommend to the District Court that the hearing decision be reversed, and this case be remanded to the Commissioner of Social Security for further proceedings consistent with this order.[7]

SO ORDERED.

DATED: August 24, 2011.

                                       */s/ Robert K. Roach*
                                       Robert K. Roach
                                       UNITED STATES MAGISTRATE JUDGE

---

[7] By recommending that this case be remanded for further administrative proceedings, I do not suggest that plaintiff is or should be found to be mentally retarded or disabled.

Standard Instruction to Litigants

A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).